22-12148. Ms. Lee, I see that you have reserved five minutes for rebuttal. You may begin when you are ready. Thank you, Your Honor. May it please the Court, Jessica Lee for the appellant, Mr. Simmons. Mr. Simmons' defense at trial was that he was taken against his will by the driver of the vehicle. That driver of the vehicle took off before he could be apprehended. Within minutes of his arrest, Mr. Simmons immediately asked officers, is there anybody else in the car? Did you guys catch the other guy? The district court did not allow Mr. Simmons to play this portion of the admitted evidence during his closing. This substantially impaired Mr. Simmons' closing and tied his hands. Why didn't he play those portions of the video during his presentation of his evidence? Your Honor, it was already admitted as a whole into the evidence, Your Honor. The officer who had testified was only there after I believe it was 27 seconds, Your Honor. Because the evidence was admitted as a whole, Mr. Simmons did not think it was necessary to go into those statements. Well, he obviously did think it was necessary to go into those statements in his closing. One might imagine that he wanted to do it in closing rather than in his presentation of the evidence so that the prosecution would not have an opportunity to rebut that evidence. What's your response to that? Your Honor, that was not the trial strategy, Your Honor. These statements were not to be proven for the matter of it asserted. It was to provide context of the timeliness of everything, Your Honor. The statements from those three clips were statements made by Mr. Simmons, who did not testify at trial and was not required to testify at trial, Your Honor. There was no other way to necessarily get those statements into evidence. However, it was already admitted as a whole. Didn't your client object at trial to Exhibit 11 once the defendant played that small snippet? Then your client objected to the playing of the rest of the video. He actually objected prior to the video coming in. OK, but raised an objection as to the video. That's correct, Your Honor. After ordering Officer Hunter to whether or not he could authenticate that portion of the video. And the judge overruled his objection and still allowed the government to play a small snippet of the video. Well, Your Honor, I don't believe the record is very clear. At first, the judge says that he will admit this portion. However, during closing, when at the side bench, judge had said, the government even admitted that, yes, this was our exhibit. We admitted it completely in its entirety. And the judge, the court, had said to defense counsel, well, we're only going to play for the jury what has been published. But if the jury has additional questions, we will play the evidence for them. However, the district court actually comes back after the close of evidence and after closing and comes back and basically reverses his ruling in some ways, my interpretation of it, Your Honor. He comes back and says, well, no, because those portions were only played, we're only going to play those 27 seconds. Evidence is admitted. The video was admitted in its entirety. But because it was not published in its entirety, you cannot go back and play those portions. And let me also, this is exhibit 11 we're talking about. I understand that there's also an exhibit four, which is a different body cam. And on that body cam, you can hear the statements that your client wants to talk about regarding exhibit 11. You can hear Simmons asking Officer Hunter whether law enforcement had been able to catch the other dude, so to speak. And then Officer Hunter says, what other dude? And then your client says nothing. So the evidence that you wanted to talk about at closing was in the other video, correct? It was, Your Honor, yes. And the problem here that we have is defense counsel tried to tender in the PowerPoint for the appeals court to review. However, the district court denied him the opportunity to add the PowerPoint as record. So it's not very clear. And we've gone back and forth about whether or not maybe that clip was actually from Officer Hunter's testimony, or if it was from government exhibit 11. There is no way to conclusively show for the record what part of those videos were played. But putting aside any potential error by the district judge and not letting the video be played, your client was still allowed to make the argument and present evidence through the testimony of, I believe, Mr. Higgins that someone else was in the car, right? That's correct. And so even if there was an error, why isn't it harmless? Your Honor, it is not harmless without a reasonable doubt. Because during closing, the government was able to get up there and mischaracterize the evidence. They misled the jury by saying that those statements by Mr. Simmons was not made until 45 minutes later after Mr. Officer Hunter arrived on scene, when, in fact, government exhibit 11 shows that it was actually a minute and 55 seconds after his arrest does he make this statement to the officers, asking, is there another individual in the car? Where is the guy? Why does that timing matter? Because that timeliness is important, because that goes to our full defense that this is not The government says that Mr. Simmons made this defense up with his attorney years after the fact, that he had never talked about a kidnapping when, in reality, Mr. Simmons, from the beginning, had always said there was no one. Why does 45 seconds versus, what did you say, a minute and 55 seconds? Why does that matter? 45 minutes. 45 minutes. That's what the government says, that it was 45 minutes after Officer Hunter arrived on scene, did he hear anything about another individual. And it's that difference of that contemporaneous and that timeliness is what goes to Mr. Simmons' defense, that this was not a theory that he just made up. This was something that he said from the get-go, that there was another individual, there's another guy involved, asking officers if they've caught the other individual. Also, that exhibit 11 shows the timeliness of the 911 call that was in by Mr. Melvin. I'm sorry, by Mr. Daniels. So isn't a closing argument meant to summarize and tie together the evidence that the jury has heard? Yes, Your Honor. Not to, I mean, we have cases all the time where we affirm the fact that the judge told the jury that the arguments are not evidence. The evidence that was put in is evidence, right? So if you have an evidentiary pushback, don't you need to specifically enter that evidence and tell the jury about it, rather than just throwing it up at the closing argument, which is not itself evidence? Well, Your Honor, it wasn't viewed as evidence. And I think that's the key difference. It was admitted. There is no law that requires evidence that has been admitted, that it must be published in order for the jury to consider it. Let's say there was a security video during a robbery. And the full video was 18 hours. That was how long it took. You pull the tape out, it's 18 hours. Could a defendant just wait until closing argument and start playing key pieces of that video, so long as the whole thing had been entered into evidence and develop his case at closing, rather than during the presentation of the evidence? I think it depends on how, so if, just to clarify what you're asking, so if the exhibit was admitted as a whole, but only the United States says, hey, here's this video from, we took the video out of the convenience store system. Here it is. We're going to play from minute 242 to 243, right? And that's all anyone ever says about the video, nothing else. And then in the closing, under your argument, I think the defendant could say, here is something from 1 minute 10 seconds. This shows what happened here. Now you'll see, Jerry, that at 3 minutes 43 seconds, this happens here. And then two hours later, this person comes in, and they're the real killer, and whatever. Could that happen under your theory? Yes, but I think it goes back to defense counsel and that situation you had applied, if they chose to highlight those parts of that video or not. But they're not required to publish that during this, if it's already been admitted as a whole. They're not required to publish that during that, nor to be considered evidence for the jury to consider. But why not? Because we always talk about how the arguments are not evidence. Why isn't that the defense entering evidence during the argument? I understand that technically the whole video is in, but if no one has ever pointed out any of those parts of the video to the jury, why isn't that admitting effectively evidence during the closing? The evidence rules of law does not require that evidence be published in order for it to be considered by the jury. Once the evidence has been admitted as a whole, there is no requirement. The federal rules of evidence does not require it to be published in order to be considered by the jury. Do you imagine that defense counsel would appreciate it if the government, in this case, had started during closing arguments playing, maybe even during rebuttal, playing portions of the video that were highly incriminating to your client, but that you never had any chance to respond to? Your Honor, my time is up. May I respond to your question? The difference in that, Your Honor, I believe, is the confrontation clause. Defendant then would not have the right to confront the witnesses to present any defense. Here in this situation, there is no confrontation clause issue, Your Honor. And this was the government's exhibit that was admitted. This is not. And the statements or the video clips that were coming in were to provide context. I think that's the big difference there. The defendant has the right to confront anyone that's testifying against him. In this situation, that was not implicated, Your Honor. Thank you. Thank you. You have five minutes for rebuttal. Mr. Walker? Good morning, Your Honor. May I please the court? Stuart Walker for the United States. The district court did not abuse its discretion when it comes to the closing argument issue. There was not a clear rule or a settled decision binding on the district court from this court to tell it what to do in this scenario. Instead, what the district court did was made a sensible choice about not allowing defense counsel to sit on its hands during the presentation of the evidentiary phase of trial and spring an attack upon the government at closing argument by highlighting portions of a video that were never published to the jury. So just to go back to how Judge Grant's question to Ms. Lee at the end. So how is this a surprise on the government? If this is the government's exhibit, if the entire video has been admitted, how is it that defense counsel would be springing a surprise on the government? Because by doing any closing argument, Your Honor, the government has no opportunity to call a witness to respond to it, to recall a witness that had already testified, or to present any evidence of its own. It, of course, gets rebuttal in closing argument, but that's not an opportunity to present evidence. And so the argument on appeal is pitched in terms of fairness. This is unfair because it deprived Mr. Simmons the opportunity to present his full defense. There's not a whiff of unfairness going on here because Mr. Simmons' counsel had a full and fair opportunity during the presentation of evidence when Officer Hunter was on the stand to make whatever use of Exhibit 11 that was not published by the government that he wanted to, and he didn't. We published the first 27 seconds of Exhibit 11 for the sole purpose of showing the side of the vehicle, Mr. Simmons handcuffed on the ground, and a door, I mean, I'm sorry, a tennis shoe that was stuck in the doorframe of the car just to show the jury this is how Mr. Simmons was pulled out of the car, and he left his shoe there. That's the limited purpose we used. You could have clipped the video, cut the video, and just admitted that excerpt, right? That's right, Your Honor. We could have done that. And then there wouldn't have been this issue of confusion as to how much the defense could rely on it or even play it? That would have eliminated any question about additional portions if we had just clipped that 27 seconds. But that's not the reason why we're here. Why we're here is because Mr. Simmons' counsel, despite the opportunity to do so, didn't make use of any other part of the video during the presentation of evidence at a time when the government, if it thought necessary, could have responded to that with a witness or other documentary evidence or video evidence of its own. It was only after sitting on his hands during the evidence phase of the trial that he decided to do it at closing argument. And Judge Sands did the exact right thing here. There was not a rule that compelled him to do it. But as we point out, this is perfectly consistent with the Williams case we cited in our brief. And I know this court is not used to seeing intermediate state appellate courts cited as authority, but this is a narrow issue. And there's just frankly not a lot of decisional law on it. We think the rule enunciated in Williams is a pragmatic one. It makes sense. It disincentivizes sandbagging. It disincentivizes trial by ambush, which is exactly what was going on here. And if I could just clarify, just I'm not sure if this is what my friend on the other side said, but Judge Sands did not say that if the jury wants to see part of this video, we'll bring them back in and show it to them. This is what Judge Sands said. This is ECF 150 at page 194. If they ask for anything to be played, it will be played here in the courtroom. And we will establish that what is being played falls within those things that did occur in the courtroom before the jury. So he was, and just as a practical matter, some district judges require if a jury wants to see or hear part of an audio or video transcript, they bring it back into the courtroom and do it so the court exercises some control over that. There is an automated system that some district courts use called JERS, I think it is, Jury Electronic Resources System or something like that, where the jury has the unfettered ability to go back and listen to audio and watch video without really any constraint or oversight on the part of the court. And so what happens or what can happen in a context like that is that if the jury decides to watch a part that was never published before, it has the opportunity to sort of corrode the decisional process because those other parts weren't subject to adversarial testing. In other words, when Hunter was on the stand under Cross, if Defense Counsel wanted to make additional use of the video, it would have been subject possibly to objection by the government. Maybe there's hearsay, maybe there are other objectionable things in the video. If a jury can go back and listen to any part at once, even parts it didn't hear in trial, we think arguably that could allow the jury to make a decision based on things that were not part of the evidentiary record. Could the district court here have made the opposite decision or would that have been an abuse of discretion to allow the jury to watch the full video however it pleased? Arguably, Your Honor, it would have been an abuse of discretion and that points up an issue to why we think the rule that we are kind of advocating that's consistent with what Judge Sands did in this context is if he had allowed this and then the jury had acquitted, the government had no opportunity to avail itself of what it considered to be an error and letting them consider things that were not properly performed. So, you know, we can't appeal an acquittal and so there's really no way at all for us to vindicate the right rule and for that reason, you know, that's why what we're advocating is a rule that says only things that are published during the presentation of evidence are properly viewable by the jury and arguable at closing by counsel. That, we think, that rule coupled with an instruction from the court to the jury that when you get back there and begin deliberating, you're only entitled to consider those portions of things that have been elicited during the trial and not other portions. Would that apply to a lengthy document as well? We can't, would, Your Honor. I mean, documents are a little different. The Williams Court noted this difference between documents and video or audio and what it said is, you know, documents kind of tend to speak for themselves whereas audio and video needs interpretation through a witness and it's not always exactly clear what to make of it and that's why you had it published and come out through a testifying witness. Documents are a little different but in principle, it's not different than if you had tendered and admitted, say, a 50-page operating agreement and the witness at trial, everything was, you know, targeted on paragraph, you know, six on page five but the whole thing is in, if the district court allows it to go out in full and the jury gets back there and says, well, look, on page 47, there's something that completely contradicts it, the argument is that that is grounding its decision on something that was not, you know, brought to their attention and argued, you know, testified to about in the evidence phase and argued at closing. That could be happening all the time and we don't know it because we normally don't pry into why the jury made a decision, right? You're right, you're right. So you seem to be making a carve out for videos that wouldn't apply to any other types of evidence and speak to me about the district judge's decision to do this in front of the jury to sort of limit defense counsel. I mean, isn't there a harm to the defendant in terms of the judge telling the jury, like, don't consider this, this is part of your defense, this may be part of your defense but jury, don't consider it. I mean, didn't that harm Mr. Simmons in his right to present a defense? Not at all, Your Honor. I mean, our position is that his right to assert a defense was not imperiled at all because you don't present your defense in closing argument. You present your defense during the evidence portion of the trial and so the district court was not doing anything inappropriate. But he had presented some of this. So, I mean, he had presented the idea that someone else was in the car, right? He had testimony from Mr. Higgins, right? He got, he had a deputy or officer Hunter who acknowledged that he had asked about another person in the car, right? That's right. And then now when he gets to the video, you have the judge telling the jury, well, don't consider this at all. Isn't it sort of undermining his defense? No, Your Honor, because defense counsel was perfectly entitled to argue to the jury that Hunter said, he asked me, did you look for the other dude? That was already in evidence through Hunter. The defense counsel could have argued that point to the jury. Also, they called their own witness, Melvin Higgins, whose whole testimony was that his half-brother, this dead gang member, is the one who kidnapped him and drove him. The whole of his testimony went to this question about another person in the car. The district court didn't tell the jury not to consider the evidence of another driver. It just said, you can't consider other portions of this video that were admitted and not published. And that didn't undermine the ability of defense counsel to make an argument about the other driver. And that's why the video evidence, the other portions of Exhibit 11, are completely cumulative of other evidence in the record. And that's what makes any error, if there was one, harmless beyond a reasonable doubt, because the jury already had before it all the testimony necessary for it to believe the theory that he was kidnapped against his will. Well, what about Ms. Lee's argument that the timing mattered? And so her client was deprived of the ability  You said he didn't raise the issue of another person until 45 minutes later. Well, Melvin Higgins got on the stand and said that he was called, and his half-brother is the one who kidnapped him from the very start. So the timing thing really is not material at all to the presentation of the defense. In other words, to rebut the suggestion that he made it up 45 minutes later, all the jury needed to do was believe Melvin Higgins' testimony, that his half-brother kidnapped him from the outset against his will, took him on this joyride, crashed the car, got out, and left. That completely refutes any argument that he waited to manufacture this story later. And so this question about whether he said it early on the scene or late on the scene is really not material to a presentation of the full defense. And so because all the three proffered portions of Exhibit 11 were cumulative of other things the jury already had before it, then the failure to allow the playing of those clips didn't contribute to the jury verdict. You've argued, I think you've pointed out that no rule or holding bars the court from doing what it did here. Where would you say it gets its authority to do what it did here? Is it the inherent power of the district judge to manage the trial and the evidence, or is it something else? The district has said in a lot of cases that there's a wide scope of discretion in administering sort of closing argument and generally, generally we think that was a source of authority. We think this court has supervisory powers over the lower courts, of course, and it has authority, if it wanted to, to craft a rule that speaks directly to this issue. And that's sort of what we pitched. I mean, we think a common sense, pragmatic rule like this that takes into account this sort of use of evidence versus the formal admission of evidence makes sense. And the court is authorized to do that as it's done in other contexts in other situations. Can you think of what some of those other contexts or situations are? Well, sure, Your Honor. For example, this court in the United States versus Jones invoked its supervisory powers to create a rule that instructs district courts to elicit fully articulated objections following imposition of sentence to the court's ultimate findings of fact and conclusions of law. There was no rule that required that, but the court invoked its supervisory powers and said this is a rule that we need to have for the sound administration of justice. Wasn't that to enable a review on appeal of those decisions rather than something inherently related to the district court? That may have been a motivating reason. I pointed out only to say that the court has the authority. If it's concerned, it doesn't have authority to sort of create a rule. This is not grounded in a rule of evidence or anything else. The court in the United States versus Phillips is another one where, when on 2255, a district court determines the defendant isn't tied to an out-of-time appeal, they formulate a rule that says, well, you're to vacate the judgment and reenter it and give the defendant 14 days. There was no rule that required that, and the court didn't expressly invoke its supervisory powers, although it noted that there was no rule or decision that governed it, and it adopted the procedural rule adopted by other circuits. And then the Supreme Court in Castro against the United States, that's where you're dealing with the recharacterization of pro se motions into 2255 positions, 2255 motions, and the court said, well, pro se prisoners don't recognize the drastic consequences of this recharacterization given the second or successive bar on 2255 motions. And so the United States Supreme Court expressly invoked its supervisory powers and came up with a rule to respond to that. So the court has ample authority to craft a rule if it so desires to prevent what we think is a rule that if it were otherwise would promote sort of sitting on your hands during the presentation of the case and surprising another party when there's not an opportunity to do anything about it. Can I ask you a question about your brief? And I confess I just can't tell. If we were to conclude that the district court did abuse its discretion, just assuming that we do this, and not allowing Simmons to play or discuss the unpublished portions of Exhibit 11, was that error constitutional or non-constitutional? The reason I ask, your brief seems to assume it would be constitutional error. The best reading we think, Your Honor, is that it raises some Sixth Amendment problem about a right to counsel. It denied him the effective use of his counsel to present this whole case. We didn't develop that in any depth, but constitutional or non-constitutional is subject to harmless error, and that's why we make the harmless error argument we did. But if the error was constitutional, harmlessness is a high bar for you beyond a reasonable doubt, correct? That's true. And we think that's clearly met here, given the cumulative nature of the evidence, if that's the way the court wants to analyze it. My time is about to expire, and I didn't get to address bats, and if the court has any questions, I'm happy to answer those. If there are no questions, we'd ask that Mr. Simmons' conviction be affirmed. Thank you. All right, Ms. Lee, you have five minutes. Thank you, Your Honor. To get back to my friend here and his comments, I would like to point out for the record that, so the district court judge actually made comments about that video clip twice. On Exhibit 150, page 139, the court does say right after the first objection that, okay, here's what we're gonna do. What was played before the jury can be played. Now, if the jury asks for more of that exhibit, they can ask for it. So he does imply to, he does tell defense counsel, you know, if they ask for it, we'll play more for it, which is why defense counsel gets back up and closing and encourages the jurors to, look, look at Exhibit Number 11 in its entirety. Then the judge comes back and says, no, no, no, you cannot do that, you cannot say that. Can't we interpret the judge as meaning if the jury wants to know what happened in the context leading up to the clip, say, to give it better context for what was shown in the clip, then it can ask for that, not the jury can have carte blanche to look at anything that it wants to. Well, I think, again, the evidence was admitted as a whole. They were allowed to look at the video as a whole. I believe that that was a part, that's where the government admitted it. They could have redacted it to those 27 seconds, but they chose not to. And had the government redacted it to those 27 seconds, then defense counsel could have gotten up and gotten to the other portions of the video. However, they already admitted it as a whole. And again, the government repeats that during closings, or during the sidebar conferences, that this evidence was admitted as a whole. I will also note, in response to the New Jersey case in Williams, that, again, deals with a Confrontation Clause issue. The government did not play those seven minutes, and what the court said was that, because the defendant did not have a right to, it's basically a witness testifying, again, that goes to a Confrontation Clause issue, which is not relevant, it's not in this case here, Your Honor, and again, that's a New Jersey State case law. I think it's indicative that we can't find much case law about this issue, because it is very commonplace in jury trials that large, voluminous records are admitted as a whole in the exhibit. Only certain things are published for the jury to review. There are jail phone calls, wiretap cases, where countless phone calls come in, and the government or the defense will only publish certain amounts of those certain phone calls. But the jury can admit everything as a whole. Speaking only for myself, it seems that the other reason that we may not have cases on this is that parties rarely try to sandbag the other side with new evidence during closing arguments. Couldn't that be a different reason why we don't have a lot of precedent on this? No, I disagree, Your Honor. I do believe that this happens in different cases, where governments will try, just like the Williams case, there are cases out of the Seventh Circuit and Tenth Circuit where certain transcripts or audio recordings were not presented, and they hold it against the defendant oftentimes, that, well, defendant counsel should have objected to that. They knew this evidence was coming in. They should have objected to it, and they didn't raise those proper objections. And I think in this case, as Judge Sand says, the ball bounces on both sides. Just because the government admits this evidence, they can't come back and say, no, no, no, no, we only admit it for this 27 seconds. You can't play this other part. Even though it's admitted completely for the record. That's where I think the distinction is in this case, Your Honor. And to also comment back on the prejudice that was caused here. Mr. Simmons, the district court's ruling basically torpedoed Mr. Simmons' defense. Going back, the reason why Exhibit 11 was so important was to show the timeliness of everything. Yes, there are witnesses who came and testified, but the whole crux came down to how quickly was this information corroborated? That Exhibit 11 showed the timeliness, exactly the times when the statements were made in corroborating the 911 call coming through on the CAD report. I still can't understand why this evidence was so crucial. It wouldn't have been crucial enough to present during the presentation of evidence and to allow counsel to report back on it at the closing argument, as opposed to present it for the first time. To me, it belies the suggestion that it was so crucial. It seems more likely that there were potential holes in that evidence that the defense didn't want to subject to the adversarial process that would have come with a straightforward presentation of the evidence. Why is that incorrect? I don't think it was anything. Those statements actually would help the defendant, Your Honor, but it's more about the timeliness, the timeframe of it, to corroborate the defense that he did present during trial. And so, it goes back to just giving the timeframe in the context of what was going on. And, Your Honors, my time's almost up here, but we ask that the court vacate Mr. Simmons' conviction and remand for a retrial for his case, Your Honor. Thank you both. We have your case under advisement. Thank you.